IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00952-PAB-NRN

DOUGLAS C. LEHMAN,

    Plaintiff,

v.

BRIAN McKINNON,
JAQUES, Correctional Officer Sgt.,
McCARROLL, Correctional Officer,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Recommendation on Defendants' Motion for Summary Judgment [Docket No. 170] filed on July 10, 2019. Magistrate Judge N. Reid Neureiter recommends that defendants' motion for summary judgment [Docket No. 117] be granted. Plaintiff filed objections on July 29, 2019. Docket No. 173. Defendants filed a response to plaintiff's objections on August 19, 2019. Docket No. 176.

**I. BACKGROUND**

The background facts have been set forth in the magistrate judge's recommendation and will not be repeated here except as relevant to resolving plaintiff's objections. Plaintiff filed a pro se prisoner complaint alleging violations of his Eighth Amendment rights as a result of an altercation with Correctional Officer Brian McKinnon on February 7, 2017 in the Limon Correctional Facility, which is part of the Colorado

Department of Corrections. Docket No. 40 at 6-7. On that date, plaintiff attacked Officer McKinnon in the cafeteria. Docket No. 135 at 36, ¶ 4; Docket No. 147 at 2. Plaintiff claims that his Eighth Amendment rights were violated by Officer McKinnon spraying him in the face with pepper spray after plaintiff had been restrained. Docket No. 40 at 6. He also claims that the other defendants, Correctional Officers Ryan Jaques and Patrick McCarroll, failed to protect him from and report Officer McKinnon's alleged assault. *Id.* at 12-14.

Defendants moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing his lawsuit. Docket No. 117 at 6. Defendants contend that, because plaintiff did not file a grievance reporting the incident until January 26, 2018, eleven months later, he failed to meet the requirement under DOC Administrative Regulation 850-04 that an inmate must file his grievance within 30 days of the date that the inmate knew, or should have known, of the facts giving rise to the grievance.[1] *Id.* at 6-7. Because plaintiff failed to follow this procedure, defendants argue, he did not properly exhaust his administrative remedies. *Id.* at 7.

Plaintiff contends that he timely filed his first grievance because he was not

---

[1]An inmate must first attempt to resolve a complaint informally before filing a formal grievance. Docket No. 117-2 at 2; AR 850-04 at IV.B. After filing an informal complaint, the inmate may file a Step 1 grievance. Docket No. 117-2 at 3; AR 850-04 at IV.B. The "Step 1 Grievance must be filed no later than 30 calendar days from the date the offender knew, or should have known, of the facts [giving] rise to the grievance." Docket No. 117-2 at 8; AR 850-04 at IV.F.1.a. An unfavorable ruling on the Step 1 grievance will allow the inmate to file a Step 2 grievance and, if also unfavorable, a Step 3 grievance. Docket No. 117-2 at 8; AR 850-04 at IV.F.1.b. The denial of the Step 3 grievance will exhaust the inmate's administrative remedies. Docket No. 117-2 at 7; AR 850-04 at IV.E.3.c(1).

aware of the underlying facts giving rise to his grievance until January 1, 2018, when, in connection with a criminal case filed against him for assaulting Officer McKinnon, *see* Docket No. 117 at 4, ¶ 19; Docket No. 135 at 3, ¶ 21, he watched a video of the incident. Docket No. 135 at 3, ¶ 28-30. Plaintiff claims that, because he was unconscious at some point during the incident, it was not until he watched the video that he learned Officer McKinnon had sprayed him with pepper spray after he was restrained. *Id.* at 2, ¶ 15; at 3, ¶ 26. Thus, according to plaintiff, he filed his first grievance within the 30-day window and properly exhausted his administrative remedies thereafter.

The magistrate judge recommends that plaintiff's claims be dismissed with prejudice for failure to exhaust his administrative remedies. Docket No. 170 at 16. The magistrate judge found that plaintiff's filing of his first grievance, eleven months after the alleged assault, was not timely filed within the 30-day filing deadline. *Id.* at 14.

**II. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

When reviewing a magistrate judge's recommendation on a dispositive motion, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121*

4

*East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). To be sufficiently specific, an objection must "enable[] the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *See id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

## III. ANALYSIS

Plaintiff raises twelve objections to the magistrate judge's recommendation that defendants' summary judgment motion be granted. *See* Docket No. 173. In his third objection, plaintiff argues that he was unconscious when he was pepper sprayed by Officer McKinnon and, for this reason, he was not immediately aware that it had happened until he watched the video. Docket No. 173 at 4-5; *see also* Docket No. 135 at 3, ¶ 26. He argues that there is a genuine dispute of material fact as to whether he was unconscious and, accordingly, whether he timely filed his grievance. Docket No. 173 at 4. For this reason, he argues that summary judgment is inappropriate. *Id.*

Defendants argue that plaintiff's assertion that he was unconscious when he was pepper sprayed by Officer McKinnon is contradicted by the surveillance video. Docket No. 176 at 4-5; *see also* Docket No. 120 (the video). Specifically, defendants contend that "[t]he video of the incident shows that Plaintiff was conscious at all times" because he "voluntarily put his hands behind his back to be handcuffed," "rolled to his right side," and raised his head. Docket No. 147 at 8. Thus, according to defendants, the Court should not adopt plaintiff's version of the facts in ruling on the motion for summary judgment. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) (a court should not adopt a version of the facts that is "blatantly contradicted by the record, so that no reasonable

5

jury could believe it.").

The Court concludes that a reasonable jury could find that plaintiff was unconscious during the time that plaintiff was apparently pepper sprayed by Officer McKinnon. In the video, plaintiff stands against a wall in the cafeteria area, appearing at first to comply with an order from Officer McKinnon. Docket No. 120. Once Officer McKinnon is next to plaintiff, plaintiff begins to hit Officer McKinnon several times, at which time Officer McKinnon stumbles over a table. *Id.* Plaintiff continues assaulting Officer McKinnon as another corrections officer sprays plaintiff in the face with pepper spray. *Id.* After Officer McKinnon grabs plaintiff's legs to restrain him, plaintiff appears to voluntarily lie down on the floor, face down, and puts his hands behind his back. *Id.* At this point, two other corrections officers restrain plaintiff's arms and legs. *Id.* Officer McKinnon stands up, walks to where plaintiff's head is on the ground, and appears to pepper spray plaintiff in the face while the two officers have plaintiff restrained. *Id.*

Importantly, from the time that plaintiff goes to the ground until right after Officer McKinnon sprays plaintiff – a period which lasts no longer than 15 seconds – plaintiff's body is partially obstructed by a table and by the corrections officers. Any sign of movement of plaintiff's legs and head is obscured. And, even if movement of plaintiff's extremities is visible, such as the briefly visible movement of plaintiff's legs after he is sprayed by Officer McKinnon, it is not clear from the video that this is voluntary movement inconsistent with being unconscious. The video does not "blatantly contradict[]" plaintiff's allegations of unconsciousness so as to cause the Court to disregard plaintiff's version of the facts. *See Scott*, 550 U.S. at 380-81; *see also*

6

*Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013) (distinguishing *Scott* where "[t]he contents of the video are too uncertain to discount [the plaintiff's] version of the events" and "the video does not so blatantly contradict the version of events told by [the plaintiff] that no reasonable jury could believe his version"); *Ross v. Burlington N. and Santa Fe Ry. Co.*, 528 F. App'x 960, 965 (10th Cir. 2013) (unpublished) (reversing summary judgment where the video upon which the district court relied "does not so utterly discredit [the plaintiff's] evidence that no reasonable jury could believe her version of the events").

Defendants argue that the video "plainly does not show Defendants trying multiple times to get Plaintiff to regain consciousness, as Plaintiff alleges in his Objection 3." Docket No. 176 at 5. Further, defendants point to the fact that the video demonstrates plaintiff "walking in a manner inconsistent with his claim that he was totally unconscious just moments earlier," and that contemporaneous medical records do not report that plaintiff lost consciousness. *Id.* According to defendants, the "factual record amply demonstrates" that plaintiff's objection is without merit. *Id.*

The Court disagrees. First, as set out above, the portion of the video during which plaintiff is on the ground and restrained by several officers is obstructed. Therefore, the Court does not find that plaintiff's allegation that "his unresponsive form gets rolled around the floor a few times in [an] effort to get him to respond," Docket No. 173 at 4, is "plainly" contradicted by the video, as defendants suggest. Second, whether plaintiff's behavior at the end of the incident demonstrates that he was not previously unconscious is not a question for the Court to decide, but rather is a question of fact for the jury. The Court is not in a position to exercise medical judgment and, in

7

turn, usurp the jury's fact-finding role.

Finally, the fact that the officers who immediately responded to the scene of the incident wrote affidavits swearing that plaintiff was not unconscious, and the fact that the medical reports do not mention plaintiff being unconscious, do not permit the Court to enter summary judgment in defendants' favor. While the officers submitted affidavits attesting to plaintiff being conscious, plaintiff submitted a declaration under penalty of perjury that he was unconscious. *See* Docket No. 135 at 2, ¶ 15 ("Plaintiff is render[ed] complete unconscious for 3 minutes."); *id.* at 4 ("Pursuant to 28 U.S.C. [§] 1746,[2] I declare under penalty of perjury that the foregoing is true and correct"). Given the non-dispositive nature of the video on the issue of unconsciousness, the dueling affidavits and declaration create a genuine issue of material fact that precludes the Court from entering summary judgment. *Cf. Davis v. Hernandez*, 798 F.3d 290, 291-92, 296 (5th Cir. 2015) (reversing grant of summary judgment for failure to exhaust administrative remedies on the basis that it was error for magistrate judge and district court to not consider as competent evidence the pro se plaintiff's sworn statement in objection to magistrate judge's recommendation that jail staff told him there was no step 2

---

[2]"Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746(2).

8

grievance procedure). The fact that the contemporaneous medical reports do not mention any unconsciousness does not so blatantly defeat plaintiff's argument such that there is no genuine issue of material fact.

Even if plaintiff was conscious throughout the incident, a genuine issue of material fact nonetheless exists to preclude summary judgment. Plaintiff objects to the portion of the magistrate judge's recommendation that cites *Bullock v. Borough of Roselle*, 2018 WL 4179481, at *5 (D.N.J. Aug. 31, 2018), for the proposition that "it is the rare plaintiff who would not be contemporaneously aware of . . . the fact of injury from excessive use of force." Docket No. 173 at 5; Docket No. 170 at 14. In their motion for summary judgment, defendants argue that, because plaintiff "suffered from immediate extreme pain, a raw throat, burning face for 2-3 days, difficulty swallowing . . ., stomach pains . . ., and his nose and lungs burning," plaintiff was thus "aware that he was subjected to use of force by staff, and of those injuries, in February of 2017." Docket No. 117 at 8. Plaintiff argues that, because he "was sprayed with O/C spray multiple times prior to . . . being restrain[ed]," "he had no reason to think or believe his pain and [injuries] hadn[']t come from that initial force used [(the first spray)]." Docket No. 173 at 5-6.

The Court agrees with plaintiff. The video demonstrates that, after plaintiff assaulted Officer McKinnon, he was pepper sprayed in the facial area by another corrections officer.[3] Docket No. 120. The injuries suffered by plaintiff and referenced

---

[3]Plaintiff does not base any claim on this initial use of pepper spray on him. Docket No. 173 at 6; *see also* Docket No. 40 at 5 (plaintiff stating in his amended complaint that he is not "talking about Sgt[.] Jaques['] use of O/C spray on [plaintiff] during [the] assault prior to [plaintiff] giving up and being restrained").

9

by defendants, namely facial burning, respiratory issues, and stomach pain, could just as easily have resulted from the first spray as they could from the second. Thus, there is no conclusive reason that plaintiff should have known that his injuries came from a second instance of being pepper sprayed, particularly if he was suffering from "[temporary] blindness, . . . panic, [or] mental confusion," Docket No. 135 at 2, ¶ 19, when that second spray occurred.

Finally, plaintiff objects to the portion of the magistrate judge's order finding that, "[a]t the very latest, Mr. Lehman had access to all the discovery produced to his counsel in the criminal case when he and his lawyer met to review the discovery on September 21, 2017." Docket No. 170 at 11. He argues that he "never said he had access to any information about the facts set forth in his grievance on [September 21, 2017]," and that "he did not have access at this time to the video of the inc[i]dent until" January 1, 2018. Docket No. 173 at 1. Defendants respond by arguing that plaintiff nevertheless "had access to the video months before he filed his grievance, but failed to exercise diligence in pursuing his potential claims." Docket No. 176 at 4. Defendants also contend that plaintiff "further accessed written reports, which specifically mention that Plaintiff was sprayed multiple times with OC spray by officers . . . and that the officer he assaulted – McKinnon – deployed OC spray on Plaintiff." *Id.*

The record does not support defendants' argument that plaintiff had access to or knowledge of the videotape by September 21, 2017. The record indicates that, on June 20, 2017, plaintiff's attorney downloaded the discovery in plaintiff's criminal case, which included a surveillance video of the incident. Docket No. 117-7 at 1. Plaintiff stated in his declaration in opposition to defendants' motion for summary judgment that, on

10

September 21, 2017, he went over the "272 [pages] of *paper* discovery." Docket No. 135 at 3, ¶ 24 (emphasis added).[4] There is no indication in the record, however, that plaintiff's attorney gave plaintiff a copy of the video, showed plaintiff the video, or informed plaintiff of the existence of the video on September 21, 2017, or at any time before January 1, 2018. The attorney's possession of the video is not evidence that plaintiff viewed it,[5] and to find that plaintiff must have viewed the video in September because his attorney had possession of it would require the Court to draw an inference in favor of the moving party. "[O]n summary judgment, the Court cannot draw inferences in the moving party's favor." *Gilmore v. Sicotte*, No. 15-cv-00741-PAB-MJW, 2016 WL 791935, at *2 (D. Colo. Mar. 1, 2016) (citing *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010)). Thus, a genuine issue of material fact exists as to whether plaintiff had access to the video on September 21, 2017.

Moreover, defendants' argument that the paper discovery reviewed by plaintiff would have informed him by September 21, 2017 that Officer McKinnon had sprayed him is unavailing. Defendants cite to three documents for the proposition that plaintiff knew or should have known by that date that he had been sprayed by Officer

---

[4]Plaintiff declared under penalty of perjury that this statement was true and correct, Docket No. 135 at 4, which may be treated with like force and effect given to a sworn affidavit. 28 U.S.C. § 1746.

[5]Defendants do not argue that plaintiff's counsel's purported knowledge that Officer McKinnon sprayed plaintiff may be imputed onto plaintiff through their principal-agent relationship. Such an argument would likely be unavailing, since plaintiff's counsel represented plaintiff in the course of his criminal case, not this civil rights case. *See* Restatement (Third) of Agency § 5.03 (2006) (agent's knowledge of a fact "is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal.")

McKinnon: (1) a "Use of Force After Action Review" form completed by an unknown CDOC employee; (2) a supervisor's summary of the incident completed by an unknown CDOC employee; and (3) an incident report completed by Officer McCarroll. Docket No. 176 at 4 (citing Docket No. 135 at 9, 12, and 31).

The documents cited by defendants do not demonstrate that plaintiff knew, or should have known, of the events giving rise to the grievance when he reviewed these documents on September 21, 2017. The Use of Force After Action Review details the incident, stating:

> [Plaintiff] started striking a staff member in the head and facial area with a closed fist and the cast that was on his left hand. Staff gave the offender verbal directives to stop, which the offender failed to follow. Staff then delivered a 1-3 second application of Oleoresin Capsicum while continuing to give the offender verbal directives. The offender continued to strike the staff member prompting staff to deliver an additional 1-3 second application of OC while giving verbal directives to stop and prone out. The offender followed staff['s] directives, proned out, and was placed into wrist and leg restraints. The offender was then escorted to receiving in order to be processed into restrictive housing.

Docket No. 135 at 9. This document does not indicate that plaintiff was sprayed in the face while he was on the floor. Instead, it reads as though the pepper sprays had ceased by the time that plaintiff complied with staff's orders and had proned out. Contrary to defendants' argument, this document does not demonstrate that, after reviewing it, plaintiff knew or should have known that Officer McKinnon pepper sprayed him.

Defendant next points to a supervisor's summary of the incident, which, after describing plaintiff's assault on Officer McKinnon, states:

> Officer McKinnon attempted to utilize his OC during the assault but was unable to produce any [effect]. Offender Lehman then came around the

12

> table the other direction in order to continue his assault on the officer. . . .
> Sgt[.] Jaques then began discharging OC from his hand[-]held cannister to
> the facial area of the offender. CO McKinnon was able to secure the
> offender['s] left leg and help push the offender off balance while Sgt[.]
> Jaques was spraying the offender with OC. After being sprayed with two
> 1-3 second bursts of OC, the offender disengaged and lay down on the
> floor. Sgt[.] Jaques, CO McCarroll and CO McKinnon were able to
> restrain offender Lehman. . . .

Docket No. 135 at 12. Again, this summary does not indicate that plaintiff was sprayed with pepper spray while he was restrained by the officers.

Finally, defendants point to Officer McCarroll's incident report, which states:

> . . . I then saw the offender walk away. I then smelled oleoresin capsicum
> being deployed. I walked over towards the exit of side one and saw
> Officer McKinnon and an offender on the floor. Officer McKinnon was
> holding on to the offender['s] legs and he deployed a 3-5 second burst of
> oleoresin capsicum from his MK-9 striking the offender in the facial area.
> I secured the offender['s] left arm and Sergeant Jaques secured the
> offender's right arm and applied wrist restraints to the offender['s] right
> wrist. . . . I applied leg restraints to both arms of the offender just below
> the elbow joint.

Docket No. 135 at 31. Although this report indicates that Officer McKinnon deployed pepper spray, it does not indicate that he did so while plaintiff was restrained. Instead, the report suggests that Officer McKinnon sprayed plaintiff in the face while restraining plaintiff's legs, which is belied by the video. The events described in this report would not inform plaintiff with certainty that Officer McKinnon sprayed him while he was restrained such that plaintiff knew, or should have known, of the allegedly grievable offense.

In fact, none of these reports indicate that plaintiff was sprayed by Officer McKinnon while plaintiff's arms were restrained behind his back, as the video appears to show. The Court cannot conclude, based on these reports, that plaintiff knew, or

13

should have known, that he was sprayed in the face by Officer McKinnon after he was restrained by two other officers. Viewing the evidence in the light most favorable to the nonmoving party, *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001), the Court finds that a genuine issue of material fact exists as to when plaintiff knew, or should have known, of the facts giving rise to his grievance and, as a result, a genuine issue of fact exists as to whether plaintiff exhausted his administrative remedies. The existence of this material question of fact prevents the Court from entering summary judgment here. For these reasons, the Court will reject the magistrate judge's recommendation and deny defendants' motion for summary judgment.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the Recommendation on Defendants' Motion for Summary Judgment (Dkt. # 117) [Docket No. 170] is **REJECTED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 117] is **DENIED**.

DATED September 16, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge