IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00952-PAB-NRN

DOUGLAS LEHMAN,

Mr. Lehman,

v.

BRIAN MCKINNON,
CORRECTIONAL OFFICER JAQUES, and
CORRECTIONAL OFFICER MCCARROLL,

Defendants.
_____

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #264) and
DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT (DKT. #268)**
_____

**N. REID NEUREITER**
**United States Magistrate Judge**

Presently before this Court is Defendants McKinnon, Jaques, and McCarroll's

Motion for Summary Judgment arguing that they are entitled to summary judgment on

all of Plaintiff's claims. Dkt. #264. This motion was referred to the Court for a

recommendation by Chief Judge Philip A. Brimmer on February 10, 2020. Dkt. #228.

Plaintiff responded (Dkt. #284) and Defendants replied. Dkt. #290. On June 5,

2020, the Court heard argument on the instant motion, as well as Plaintiff's Motion for

Summary Judgment. Dkt. #292. In connection with their motion, Defendants submitted

11 exhibits, including a transcript of Mr. Lehman's deposition (Dkt. #264-1), medical

records for Officer McKinnon (Dkt. ##264-2 & -3), incident reports completed by Officers

Jaques and McCarroll (Dkt. ##264-4 & -5), a slow-motion version of a video (Dkt. #264-

6), Officers McKinnon and Jaques' written discovery responses (Dkt. ##464-7 & -8), a declaration of Officer McCarroll (Dkt. #264-9), incident reports (Dkt. #264-10), an Intensive Supervision Log (Dkt. #264-11), and documents pertaining to each Defendant's employment status with the Colorado Department of Corrections ("CDOC") (Dkt. #264-13). Mr. Lehman submitted medical records, incident reports, and written discovery responses from Defendants in his response. Dkt. ##284 at 15–44. Having carefully considered the briefing, the record, the discussion at the June 5, 2020 hearing, and applicable law, the Court finds that no genuine issues of material fact exist with respect to Mr. Lehman's claims against all three Defendants. It is therefore recommended that Defendants' Motion for Summary Judgment be granted.

## BACKGROUND

Mr. Lehman filed a pro se prisoner complaint alleging violations of his Eighth Amendment rights as a result of an altercation with Defendant, Correctional Officer Brian McKinnon, on February 7, 2017 in the Limon Correctional Facility ("LCF"), which is part of the CDOC. On that date, Mr. Lehman attacked Officer McKinnon in the cafeteria, striking Officer McKinnon multiple times in the head with a forearm that was encased in a hard cast. Mr. Lehman claims that his Eighth Amendment rights were violated when Officer McKinnon sprayed him in the face with pepper spray twice after Mr. Lehman had been restrained: once when Officer McKinnon was sitting on Mr. Lehman's legs as he lay on the floor, and a second time after Officer McKinnon was able to get up and walk around Correctional Officer Ryan Jaques towards Mr. Lehman, who was still on the floor. Mr. Lehman also claims that the other Defendants, Officers

Jaques and Patrick McCarroll, failed to protect him from and failed to report Officer McKinnon's alleged assault.

**FACTS VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF**

For the purpose of this Recommendation, the Court views all facts and reasonable inferences in the light most favorable to Mr. Lehman, who is the non-moving party. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Using this standard, the Court finds the following facts to be undisputed, either because they were admitted by Mr. Lehman in his Response (Dkt. #261) or are established in the record and stand uncontradicted.

1.      Mr. Lehman is a prison inmate incarcerated in the CDOC. Dkt. #261 ¶ 1.

2.      Defendants were employed at the LCF on February 7, 2017. *Id.* ¶ 2.

3.      Mr. Lehman was involved in an incident at LCF on February 7, 2017, during which he attacked Officer McKinnon, striking Officer McKinnon repeatedly in the head with the cast on his forearm and also punching him repeatedly in the head with his closed (uncasted) fist. Dkt. #284 ¶ 4; Dkt. #120 & 270. Officers Jaques and McCarroll responded to the assault on Officer McKinnon. *Id.*

4.      The incident began when Officer McKinnon ordered Mr. Lehman to submit to handcuffs after Mr. Lehman threw food trays, a metal serving tray, and other objects in the dining hall. Dkt. #284 ¶ 2.

5.      Mr. Lehman walked toward the wall, turned around to face the wall as if to comply, at which point Officer McKinnon approached Mr. Lehman, who, without warning, began to punch Officer McKinnon. *Id.* ¶ 3.

6.     As a result of Mr. Lehman's unprovoked attack, Officer McKinnon sustained a facial fracture, a concussion, and a torn rotator cuff. *Id.* ¶ 5.

7.     Officers Jaques and McCarroll responded to the assault. Officer Jaques deployed OC spray directly towards Mr. Lehman's facial area twice, for a total of about 2.5–3 seconds, in an effort to end the assault on Officer McKinnon, and Officers Jaques and McCarroll assisted in securing Mr. Lehman following the assault. *Id.* ¶ 6; Dkt. ##120 & 270. The first application of pepper spray did not deter Mr. Lehman. It was only after he was sprayed with pepper spray a second time by Officer Jaques that Mr. Lehman lay face-down on the floor and put his hands out to his side. Dkt. ##120 & 270.

8.     While Mr. Lehman was on the floor and as Officer McCarroll approached Mr. Lehman, Officer McKinnon was sitting on Mr. Lehman's legs and sprayed pepper spray towards Mr. Lehman's head. *Id.*

9.     Officer McKinnon then got up off Mr. Lehman's legs, stumbled backwards and caught himself using a cafeteria table, walked around Officer Jaques, and leaned towards Mr. Lehman, who was still on the ground, face down. *Id.* At this point Officers McCarroll and Jacques were still leaning over Mr. Lehman trying to secure his restraints.

10.    Video footage shows that about 25 seconds lapsed from the time Mr. Lehman lay on the floor and put his hands behind his back until Officer McKinnon leaned around Officer Jaques before stepping back. *Id.*

11.    Approximately 1.5 seconds lapsed during the time Officer McKinnon leaned around Officer Jaques after Mr. Lehman was restrained. *Id.*

12.     Mr. Lehman does not contest that Officer Jaques' multiple uses of OC spray were a lawful way to end his assault on Officer McKinnon. Dkt. #284 ¶ 11.

13.     Officer McCarroll filed an incident report which stated that Officer McKinnon used OC spray once while Officer McKinnon was on Mr. Lehman's legs. *Id.* ¶ 14. The report did not indicate that Officer McKinnon had sprayed Mr. Lehman after Officer McKinnon got up and walked around Officer Jaques.

14.     Mr. Lehman claims to have no independent recollection of Officer McKinnon's use of OC spray. Thus, Mr. Lehman bases his claims exclusively on his interpretation of the video footage. *Id.* ¶ 17.

15.     Similarly, Officer McKinnon claims to have no recollection of the incident, having suffered a concussion and facial fractures during Mr. Lehman's attack.

16.     Mr. Lehman did not further interact with Defendants after he was escorted from the dining hall. *Id.* ¶ 20.

17.     Within approximately 4.5 hours of the assault, Mr. Lehman was transferred out of LCF to Sterling Correctional Facility. *Id.* ¶ 21.

18.     Mr. Lehman remained at Sterling Correctional Facility for the following 10–12 months and has not had any further contact with any of the Defendants. *Id.* ¶ 22.

## LEGAL STANDARDS

### I.     Pro Se Litigants

When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the

pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## II.   Fed. R. Civ. P. 56

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Concrete Works of Colorado, Inc. v. City & Cty. of Denver,* 36 F.3d 1513, 1518 (10th Cir. 1994). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

### III.    Excessive Force

The Constitution prohibits the egregious use of force against a prisoner.

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986). An excessive force claim has an objective and subjective element. A plaintiff must establish that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and that the defendant applied force "'maliciously and sadistically,'" rather than "'in a good faith effort to maintain or restore discipline.'" *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quoting *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). *See also Despain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001) (excessive use of force claim sufficiently pled where it was alleged that defendant correctional officer indiscriminately discharged pepper spray as a practical joke rather than as part of "a good faith effort to maintain or restore order in the tier"). To determine whether prison officials applied force maliciously and sadistically or, rather, in good faith, courts consider (1) the need for the force, (2) whether the officers used a disproportionate amount of force, and (3) the extent of the injury inflicted. *Whitley*, 475 U.S. at 321.

When prison officials must act to "preserve internal order and discipline," courts afford them "wide-ranging deference." *Id.* This deference "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.* at 322. *See also Redmond v. Crowther*, 882 F.3d 927 (10th Cir. 2018)

(finding no constitutional violation where prison officials exposed numerous prisoners to tear gas as part of the use of force to control prisoner who has locked himself in recreation yard and refused to comply with prison officials' orders).

In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent than necessary under the circumstances. *See, e.g., Iko*, 535 F.3d 225 (finding issues of fact on excessive use of force in using significant amounts of pepper spray during cell extraction where plaintiff, a "docile and passive" inmate, had offered hands through cell door to "cuff up" and final burst of spray was delivered after inmate had lain down on floor of cell); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device). However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F. Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use

of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

### IV.   Qualified Immunity

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted). Specifically, the plaintiff initially bears a heavy two-part burden and must show "(1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries [his] twofold burden, the defendant prevails." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no

genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). *See also Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.") (internal quotation marks and citation omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Under the second prong, a right is "clearly established" for purposes of the qualified-immunity analysis where it is sufficiently clear that every reasonable official would have understood that his conduct violated that right. *Mullenix*, 136 S. Ct. at 308. To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent—either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To do that, the precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality"). If a plaintiff fails to satisfy either prong, the court must grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

In the context of an assertion of qualified immunity in a motion for summary judgment, the Tenth Circuit has stated that "[i]n determining whether the plaintiff meets this burden, courts ordinarily accept the plaintiff's version of the facts." *Redmond v.*

*Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks and citation omitted). But, the plaintiff's version of facts "must find support in the record." *Id.*

### ANALYSIS

Defendants argue that Mr. Lehman's claim for excessive force against Officer McKinnon fails because, based on the video footage, Mr. Lehman has not established a genuine issue of fact as to whether Officer McKinnon sprayed Mr. Lehman after Officer McKinnon stood up. Defendants further argue that even if Mr. Lehman's description of what the video shows is sufficient to create a dispute of fact on the issue of a second use of pepper spray by Officer McKinnon, Mr. Lehman still cannot demonstrate the elements of an excessive force claim: 1) that the alleged conduct was objectively and sufficiently harmful to establish a constitutional violation; and 2) that Officer McKinnon acted with "a sufficiently culpable state of mind."

For his part, Mr. Lehman contends that the video is uncontroverted evidence that Officer McKinnon used excessive force when he sprayed Mr. Lehman twice after he was restrained and that Officers Jaques and McCarroll saw it and could have intervened. Neither Mr. Lehman nor Officer McKinnon have any recollection of what occurred. The only uncontroverted evidence of what happened is on the video. Thus, Mr. Lehman's claims against the Defendants rely entirely on the premise that Officer McKinnon used excessive force on Mr. Lehman, which, according to Mr. Lehman, is indisputably captured in the video. Mr. Lehman also argues that Officer McKinnon's claim that he does not remember what happened after he was assaulted is belied by medical records, and that the Defendants' failure to report Officer McKinnon's use of force is evidence of malicious intent on the part of Officer McKinnon.

## I.   Video Evidence

As this Court noted in its Report and Recommendation on Mr. Lehman's Motion

for Summary Judgment (Dkt. #293), the video and what it shows or does not show has

already been the subject of discussion in this case. In a prior order rejecting this Court's

recommendation and denying Defendants' Motion for Summary Judgment on the issue

of exhaustion of administrative remedies, Chief Judge Brimmer noted that a video, and

this video in particular, must "blatantly contradict" the allegations made in order to

support judgment as a matter of law. But Chief Judge Brimmer's analysis of the video

came in the context of Mr. Lehman's claim of being unconscious (relating to the

exhaustion of administrative remedies) and did not focus on the issues presented in the

present motion:

> The video does not "blatantly contradict[ ]" plaintiff's allegations of
> unconsciousness so as to cause the Court to disregard plaintiff's version
> of the facts. *See Scott*, 550 U.S. at 380-81; *see also Ramirez v. Martinez*,
> 716 F.3d 369, 374 (5th Cir. 2013) (distinguishing *Scott* where "[t]he
> contents of the video are too uncertain to discount [the plaintiff's] version
> of the events" and "the video does not so blatantly contradict the version
> of events told by [the plaintiff] that no reasonable jury could believe his
> version"); *Ross v. Burlington N. and Santa Fe Ry. Co.*, 528 F. App'x 960,
> 965 (10th Cir. 2013) (unpublished) (reversing summary judgment where
> the video upon which the district court relied "does not so utterly discredit
> [the plaintiff's] evidence that no reasonable jury could believe her version
> of the events").

*Lehman v. McKinnon*, No. 18-cv-00952-PAB-NRN, 2019 WL 4412573, at *4 (D. Colo.

Sept. 16, 2019). Chief Judge Brimmer went on to note that portions of the video do not

show an unobstructed view of the events. This Court is mindful of Chief Judge

Brimmer's decision. Nonetheless, Mr. Lehman has repeatedly asserted that he has no

independent recollection of what occurred, and as such, there are no factual allegations

by Mr. Lehman to contradict or supplement what may be unclear on the video. The

video is the only evidence Mr. Lehman relies on to support his claim of a constitutional violation. Considering the parts of the video that are unobstructed, the Court finds that Mr. Lehman has not established a genuine issue of material fact that would prevent summary judgment in favor of the Defendants.

The Court has reviewed the video in its original and slow-motion versions (Dkt. ##120 & 270) multiple times. The Court takes into account the context in which Mr. Lehman claims arise. First, Mr. Lehman is a big man. Upon questioning from this Court at the June 5 Hearing, Mr. Lehman stated that he stands 6'5" tall and weighs 250 lbs. Officer McKinnon, who is 5'9" tall, appears to be much older than Mr. Lehman. There is no dispute that this incident began when, after Mr. Lehman had caused a disturbance in the dining hall, he was instructed to face the wall and place his hands behind his back so that he could be handcuffed. There is also no dispute that Mr. Lehman went to the wall, turned around and feigned compliance until he was approached by Officer McKinnon, at which point Lehman proceeded to brutally assault Officer McKinnon by hitting him in the face and over the head multiple times with his casted arm. The following sequence of events, beginning with the first blow, takes place in less than thirty seconds:

- The first blow, with Mr. Lehman's casted arm, hit Officer McKinnon on the side of the head. Dkt. #270 at 11.3 seconds.

- Mr. Lehman then grabbed Officer McKinnon, who was turned away from Mr. Lehman, and hit Officer McKinnon's face with his casted arm again. The second blow causes Officer McKinnon's cap to fall off as he stumbles and puts one hand over his head.

- Mr. Lehman hits Officer McKinnon with his other arm, followed by another blow to Officer McKinnon's face with his casted arm. This blow causes Officer McKinnon to fall backward, bounce off a table and land on the floor between two cafeteria tables. *Id.* at 14.0 seconds.

- As Officer McKinnon tries to get up, Lehman persists with his attack by going around a table and again punches Officer McKinnon in the face with his casted arm. *Id.* at 16.8 seconds. Mr. Lehman pursued the injured Officer McKinnon around the table in order to deliver more blows, this time with the clenched fist of his uncasted arm.

- Officer Jaques begins to spray Mr. Lehman with pepper spray. *Id.* at 17.1 to 20.3 seconds.

- Undeterred by the pepper spray, Mr. Lehman has a hold of Officer McKinnon, who is kneeling on the floor, and proceeds to punch Officer McKinnon in the face at least four more times.

- Approximately ten seconds after the first blow to Officer McKinnon's head, Mr. Lehman stops hitting Officer McKinnon, and lay on the ground face down. *Id.* at 20.0 seconds. Mr. Lehman did not stop and move to the ground until Officer Jaques sprayed Mr. Lehman a second time.

- With Mr. Lehman on the floor face down, Officer McKinnon is on his legs as Officers Jaques and McCarroll approach them. *Id.* at 21.5 seconds. The view of Officer McKinnon on Mr. Lehman's legs is partially obstructed by a cafeteria table.

- Officer McCarroll takes a step back after he initially approaches Mr. Lehman. *Id.* at 25.5 seconds. It is at this point that, while still on Lehman's legs, it appears that Officer McKinnon sprayed Mr. Lehman with pepper spray.

- As Officers Jaques and McCarroll lean down over Mr. Lehman and begin trying to apply arm restraints, Officer McKinnon tries to get up off Mr. Lehman's legs, stumbles backwards, catches himself, and gets up to walk around the back of Officer Jaques. *Id.* at 31.1 seconds.

- Officer McKinnon leans down towards Mr. Lehman's head for one second, at most. At 32.1 seconds, Officer McKinnon is holding what appears to be his pepper spray canister down at his side. By 33.5 seconds, Officer McKinnon had leaned towards Mr. Lehman's head and then begun moving up and away from Mr. Lehman. It is during this span of approximately 1.5 seconds that Mr. Lehman alleges Officer McKinnon sprayed him the second time, claiming that there is an orange spray seen in the video. Despite multiple viewings of the video in both real time and slow motion, the Court cannot detect any second spraying by Officer McKinnon.

- Officer McKinnon stands up and backs away. Officers McCarroll and Jaques are still bent over Mr. Lehman, and appear to be securing restraints on Mr. Lehman's arms until after Officer McKinnon stands up. *Id.* at 39.9 seconds.

## II.      Eighth Amendment – Excessive Force & Failure to Intervene

"The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). What constitutes unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*, 475 U.S. at 320). An excessive force claim requires this Court to analyze two prongs: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotations and citations omitted).

### A.      Objective Element

The objective element of an of an Eighth Amendment excessive force claim is "contextual and responsive to contemporary standards of decency." *Id.* (quoting *Hudson*, 503 U.S. at 8). An injury is sufficiently serious as long as it rises above the level of *de minimus* harm. *Hudson*, 503 U.S. at 9–10 (rejecting the argument that "minor" injuries are not actionable). Mr. Lehman argues that the two sprays by Officer McKinnon caused him to suffer more severely than he would have had the use of pepper spray been limited to the two sprays by Officer Jaques to stop the attack. The Tenth Circuit has stated that "pepper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force."

*DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001); *Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005).

Nevertheless, in context and under the all the circumstances, even if Officer McKinnon were to have delivered two shots of pepper spray after Mr. Lehman had lain down on the floor, the Court does not find as a matter of law that the use of pepper spray here was objectively harmful enough to constitute a constitutional violation. Lehman's allegations, the declarations, and the video itself establish that the correctional officers had every reason to use force. A prison official may use reasonable force to "maintain or restore discipline." *Whitley*, 475 U.S. at 320. Whether Officer McKinnon used pepper spray just once (while on top of Mr. Lehman's legs) or twice (which cannot be determined from the video or any other evidence), Officer McKinnon's use of pepper spray "was not excessive under the circumstances." *See Green v. Corrections Corp. of America*, 401 Fed. Appx. 371, 376 (10th Cir. 2001).

These circumstances include:

1.     Mr. Lehman's attack on Officer McKinnon was unprovoked—it was the worst kind of sucker punch.

2.     Mr. Lehman had feigned compliance with Officer's McKinnon's prior order before surprising Officer McKinnon with his attack.

3.     Mr. Lehman continued his assault on Officer McKinnon even after a lull, when Officer McKinnon, stunned, had stumbled back around the table, and Mr. Lehman pursued Officer McKinnon to continue the beating.

4.     Mr. Lehman is huge man in comparison to Officer McKinnon and the officers who came to try to subdue him.

5.      It was undisputed by Mr. Lehman that the two shots of pepper spray by Officer Jacques were justified in initially stopping the attack. Mr. Lehman was undeterred by the first shot of Officer Jacques pepper spray.

6.      Because of Mr. Lehman's cast, it was difficult for officers to get him in hand restraints even after he had lain down.

7.      The entire episode transpired in just over thirty seconds.

8.      There was no pause or delay between Mr. Lehman's attack and Officer's McKinnon's alleged use of pepper spray to assist the other officers in getting Mr. Lehman under control. As noted, the entire event transpired in just seconds.

Under these circumstances, the use of force was unquestionably justified, and because the plaintiff/inmate had already once used the ruse of feigned compliance to assault an unsuspecting correctional officer, the Court will not second-guess split-second decisions made during a chaotic situation to restore order and to ensure another attack would not occur.

### B.      Subjective Element

Turning to the subjective prong, Mr. Lehman's evidence to suggest that Officer McKinnon acted with a culpable state of mind is limited to the video and his argument that the other officers submitted false reports that did not disclose Officer McKinnon's alleged second use of pepper spray. "A prison official may use reasonable force to 'maintain or restore discipline.'" *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) (unpublished) (quoting *Whitley*, 475 U.S. at 320). Officer McKinnon did not submit a report after the incident, likely because he was receiving medical treatment for his injuries. Officer McKinnon also states that he does not remember what happened

after Mr. Lehman began hitting him. Mr. Lehman argues that Officer McKinnon's statements about this memory loss are contradicted by medical records and asserts that this is evidence of Officer McKinnon's malicious intent. The Court disagrees and finds that this is insufficient evidence from which it can infer malicious intent on the part of Officer McKinnon, particularly in light of the fact that Mr. Lehman does not dispute that Officer McKinnon suffered a concussion as a result of the assault.

The Court also does not find the reports of other officials pertinent to Officer McKinnon's state of mind. This leaves the Court with the video, which, as described above, does not contain any indication that Officer McKinnon acted with malicious intent during any part of the incident. This was not a situation where there was a pause of even a minute where Officer McKinnon could have collected himself and gone back with the intent of inflicting revenge or punishment on Mr. Lehman. From the video, it is clear that Officer McKinnon, although injured and stunned from the beating delivered by Mr. Lehman, was trying to help his colleagues control Mr. Lehman.

The Tenth Circuit very recently addressed a claim for excessive force made against a prison guard who used pepper spray on an inmate:

> In assessing excessive-force claims, we have recognized that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself. . . . Therefore, review of a claim of the use of excessive force in a prison is to be deferential to the prison. . . . In particular, when prison officials must act to preserve internal order and discipline, we afford them wide-ranging deference. . . Although this deference does not insulate from review actions taken in bad faith and for no legitimate purpose, neither does it permit courts to freely substitute their judgment for that of officials who have made a considered choice.

*Thompson v. Orunsolu*, 798 F. App'x 288, 291 (10th Cir. 2020) (unpublished) (internal quotation marks and citations omitted). *See also Despain,* 264 F.3d at 978 (quoting

*Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) (stating that it is necessary to "balance the need for application of force with the amount of force used"). Ultimately, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Whitley*, 475 U.S. at 322. The evidence here does not support any inference in the wantonness by Mr. McKinnon in the infliction of pain.

As noted, the video is the only evidence to support Mr. Lehman's assertion that he was sprayed a second time by Officer McKinnon. There is no indication in the incident reports filed by Officers McCarroll and Jaques that this second spray occurred. Mr. Lehman argues that the reports are contradicted by the video, and as such, must be ignored. The Court disagrees. Based on its review of the video, the Court finds that the reports and the video are consistent: there is no evidence that Officer McKinnon sprayed Mr. Lehman during that second and a half that he was leaning behind Officer Jaques. The Court further finds that no reasonable juror could conclude that there was a second spray by Officer McKinnon.

But, more importantly, even if the second spray did occur, it would not have been unreasonable, based on the sequence of events that began with Mr. Lehman feigning compliance before delivering an unprovoked brutal assault, to conclude that order had not been restored until Mr. Lehman was fully and securely restrained, which did not occur until after Officer McKinnon ultimately stepped away from Mr. Lehman.

Mr. Lehman argues that Officer McKinnon's use of pepper spray was obviously unnecessary because Officer Jaques had holstered his pepper spray and Officer

McCarroll never pulled his pepper spray out, indicating that Mr. Lehman was no longer a threat. Mr. Lehman again ignores the fact that before he attacked Officer McKinnon just seconds earlier, he went so far as to put his hands behind his back to feign compliance. Where an inmate has feigned compliance in order to attack a prison guard, absent evidence of subsequent clearly excessive and unnecessary force, neither a Court nor a jury should use twenty-twenty hindsight to parse the moments after the assault (while the inmate is being secured) and declare that the efforts to control the inmate exceeded the bounds of what was reasonable. *See Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983) ("Hamstringing prison guards, however, by forbidding their use of the force necessary to maintain control of the prison not only would endanger the guards but also could subject the prisoners themselves to greater violence at the hands of their fellow inmates.). The Court finds that Mr. Lehman has not shown that there is evidence to support a reliable inference of wantonness on the part of Officer McKinnon. There was no constitutional violation here, and even if there were, Officer McKinnon is nevertheless entitled to qualified immunity because the subjective element cannot be proven.

### C. Failure to Intervene – Defendants Jaques and McCarroll

A prison official who observes the imposition of excessive force upon a prisoner at the hands of another but who take no steps to protect the prisoner can be liable under the Eighth Amendment. *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001) (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994)); *Sasa v. Zavaras*, 166 F.3d 1222 (10th Cir. 1998) (unpublished)).

Because the Court finds there was no unconstitutional use of excessive force by Officer McKinnon, Mr. Lehman's claims for failure to intervene against Officers Jaques and McCarroll fail. Even if Officer McKinnon were found to have used excessive force, the Court does not find that Officers Jaques or McCarroll knew that Officer McKinnon was about to spray Mr. Lehman, or that even if they did, they had a realistic opportunity to prevent it. It is apparent from the video that both Officers Jaques and McCarroll were occupied with Mr. Lehman and focused on restraining him, which proved difficult because Mr. Lehman's arm was in a cast. The entire episode transpires in less than 30 seconds from the time they became involved until Mr. Lehman stood up. There was not a reasonable opportunity for them to intervene to prevent Officer McKinnon from allegedly using pepper spray.

### D.      Failure to Report – Defendants Jaques, McCarroll & McKinnon

For purposes of qualified immunity, a failure to report a use of excessive force is not a recognized violation of the constitution. *See Harbor v. Cherniss*, 2016 WL 1587240, *3 (E.D. Cal. April 20, 2016). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (stating that "alleged violations of state statutes and prison regulations" are not cognizable claims); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (holding in the Eighth Amendment context that "a failure to adhere to administrative regulations does not equate to a constitutional violation."). Accordingly, even if Officer McKinnon used excessive force, all three Defendants are entitled to qualified immunity for Plaintiff's claim for failure to report.

**DEFENDANTS' PARTIAL MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT (DKT. #268)**

Defendants also seek dismissal of certain claims and requests for relief by Plaintiff in his Amended Complaint. Because I recommend dismissal of all of Mr. Lehman's claims against all three Defendants, the Defendants' Partial Motion to Dismiss (Dkt. #268) should be denied as moot.

## CONCLUSION

The Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (Dkt. #264) be **GRANTED,** and that Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #268) be **DENIED** as moot.

**IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).**

Dated:      July 7, 2020

N. Reid Neureiter
United States Magistrate Judge